UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Lisa Marie Brady</u>

v.                          Civil No. 16-cv-069-JD
                            Opinion No. 2016 DNH 204
<u>School Board, Somersworth</u>
<u>School District, et al.</u>

O R D E R

Lisa Marie Brady, proceeding pro se, brings federal and
state claims against the School Board of the Somersworth School
District; Jeni Mosca, the Superintendent of Schools; Pamela
MacDonald, the Special Education Director; and Jeanne Kincaid,
counsel for the school district, arising from the termination of
Brady's employment.[1]  The School Board, Mosca, and MacDonald move
for judgment on the pleadings.[2]  Brady objects.

Standard of Review

"After the pleadings are closed—but early enough not to
delay trial—a party may move for judgment on the pleadings."
Fed. R. Civ. P. 12(c).  The court "take[s] all well-pleaded
facts in the light most favorable to the non-moving party and
draw[s] all reasonable inferences in that party's favor."  Najas

—————————————————

[1] The claims against Jeanne Kincaid have been dismissed.

[2] The Somersworth School District is also known as SAU 56.

Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir. 2016).  Only factual allegations are credited, however, not legal conclusions or other conclusory statements that are not facts.  Id.  To survive the motion, the plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  Downing v. Glove Direct LLC, 682 F.3d 18, 22 (1st Cir. 2012) (internal quotation marks omitted).

<u>Background</u>

As the court noted in the order granting Jeanne Kincaid's motion to dismiss, the allegations in the complaint are not presented in a coherent sequential narrative but instead state legal conclusions with reference to documents and data submitted with the complaint.  Brady apparently copied a form and includes the instructions from the form in her complaint.  Brady was given an opportunity to amend the complaint but did not do so.

Brady is a licensed special education teacher who was tenured in the Somersworth School District and was working at the Somersworth Middle School.  While Brady was working there, the University of New Hampshire's Institute on Disability produced a film, called "Axel", about a special needs student in the Somersworth School District who is referred to as "AC".[3]  The

---

[3] Although Brady alleges that Mosca and MacDonald "were directly responsible" for using grant money to make the film, she does not provide facts to show how Mosca and MacDonald were

film was funded by an educational grant and portrays AC as being able to function through "facilitated communication" at grade level and with the ability to be college bound.  Brady was part of AC's team at the middle school and disagreed with the methods that were used and shown in the film and with the suggestion that AC could function at the level portrayed.

On September 3, 2012, Brady sent a grievance to Mosca and other school district employees against MacDonald, stating Brady's view that MacDonald had not properly considered Brady's concerns about the educational plan for AC and had created a hostile work environment for her.  At the suggestion of the assistant principal, Brady withdrew the grievance.

Brady did not agree with the educational plan for AC, however, and did not comply with directions she was given.  In March of 2013, Pamela MacDonald put a warning in Brady's employee file.  Brady disputed the warning with a written rebuttal and a grievance but later withdrew the grievance.

In December of 2013, Brady had problems with another staff member who, Brady suspected, was abusing prescription pain medication.  When Brady suspected that the staff member had bitten Brady's school identification badge, which left saliva on

---

involved.  Based on Brady's other allegations, the film appears to have been produced and sold by the University of New Hampshire's Institute on Disabilities, not by the defendants in this case.

the badge, Brady sent that sample along with a known sample of the staff member's saliva for DNA testing to prove who had bitten the badge.  The result was inconclusive.  The relationship between Brady and the staff member deteriorated, and the school administrators tried to mediate the situation.

In March of 2014, Mosca issued a warning to Brady about her actions, including a statement that Brady had violated the staff member's privacy and RSA 141-H:2.[4]  Brady and the other staff member were transferred to different schools.

Brady felt that her transfer from the middle school to an elementary school was a demotion.  She did not report to work at the new school.  She was granted medical leave but never returned to work.  Brady's appeal of the transfer decision to the New Hampshire Board of Education was stayed because of pending dismissal proceedings.

Beginning in the summer of 2014, Brady brought charges of educational grant fraud to the New Hampshire Commissioner of Education against Mosca, MacDonald, and others, based on the

---

[4] Chapter 141-H is titled "Genetic Testing," and RSA 141-H:2 provides the conditions under which genetic testing may be done. Mosca's accusation against Brady arose from a dispute between Brady and another staff member, during which Brady sent samples of the staff member's saliva for testing.  Mosca accused Brady of sharing the results of the test with other members of the staff.

"Axel" film.[5]  She also included charges of grant fraud in a
complaint filed with the New Hampshire Department of Labor that
alleged a violation of the Whistleblower Protection Act and in a
complaint filed with the United States Office of Inspector
General, along with other agencies.  Each agency informed her
that her charges were unfounded.  Dissatisfied with the
responses to her complaints, Brady made statements to the media
about her charges of grant fraud and disclosed confidential
information about AC.

Mosca hired an investigator to address the issues of
Brady's complaints and activities.  The investigator issued a
report on December 4, 2014, with findings that Brady had
violated the Family Educational and Privacy Act and the
Individuals with Disabilities Education Act, had "behaved in a
non-professional manner, in violation of the Somersworth Staff
ethics policy," and was insubordinate to the superintendent.
Mosca recommended that Brady be terminated.

A hearing was held before the school board over a period of
three days in January of 2015.  The school board hired an
attorney, John Teague, to act as a hearing officer and to advise
the school board.  After the hearing, the school board found

---

[5] Although Brady characterizes the defendants' conduct as
criminal, that is simply her own legal conclusion that cannot be
considered for purposes of a motion for judgment on the
pleadings.

that Brady had acted in an unprofessional manner by having a staff member's DNA tested, that her communications with parties outside the school district about AC violated federal law and school district policies, and that Brady abandoned her position at the elementary school after her transfer there.  Brady was terminated on January 20, 2015.

After Brady was terminated, the Board of Education considered her appeal of the transfer decision.  The Board concluded that it lacked jurisdiction to consider the appeal. Brady did not appeal the decision as provided under RSA 189:14.

The Department of Labor held hearings on Brady's Whistleblower Protection Act claim in January and February of 2015.  The hearing officer issued a decision on March 3, 2015, finding that the school district had showed that the reasons for transferring Brady in March of 2013 "were motivated by legitimate, non-retaliatory reasons, and not because the claimant filed two grievances" and that Brady had failed to prove her claim.  As a result, the hearing officer ruled that the Whistleblower claim was invalid.

Brady filed her complaint in this case on February 22, 2016.  In the statement of claim section of her complaint, Brady identifies two claims:  (1) a claim under 42 U.S.C. § 1983, alleging deprivation of her First and Fourteenth Amendment rights, and (2) a claim that the defendants violated the New

6

Hampshire Whistleblower Protection Act, RSA chapter 275-E.
Nevertheless, in the section of the complaint where she is
directed to list federal statutes, treaties, and provisions of
the constitution that are at issue, Brady lists nine possible
claims, many of which are based on state law.  Those claims are
summarized as follows:  § 1983 claim for violation of the right
to free speech, § 1983 claim for violation of the right to due
process, violation of the Whistleblower Protection Act,
violation of RSA 98-E:1, breach of her employment contract,
defamation, violation of RSA 641:1, and violation of RSA 638:14.

## Discussion

The remaining defendants--the school district, Mosca, and
MacDonald--move for judgment on the pleadings, asserting that
Brady has failed to allege facts that support any of her claims
and has not alleged claims on which she is entitled to relief.[6]
In her objection, Brady accuses the defendants of "soiled
hands," focuses on a statement in the defendants' memorandum
about the parties "diverse positions," provides a timeline of

---

[6] The defendants also move to dismiss the claims for failure
to comply with the pleading requirements of Federal Rule of
Civil Procedure 8(a).  Because that ground for dismissal is not
developed, it is not considered.  See United States v. Zannino,
895 F.2d 1, 17 (1st Cir. 1990); accord United States v. Nunez, -
-- F.3d ---, 2016 WL 6092692, at *4 n.4 (1st Cir. Oct. 19,
2016).

her interpretation of the events that preceded her termination, and challenges the reasons for her transfer and termination.[7]

## I.   Section 1983 – First Amendment – Free Speech

Brady claims that her employment was terminated because she expressed negative opinions about the "Axel" film, accused the school district and others of grant fraud, and tried to protect AC.  She asserts that the termination violated her First Amendment right to free speech.

The general rule that the First Amendment prohibits the government from retaliating against individuals for speaking out is qualified in the context of public employees.  McGunigle v. City of Quincy, --- F.3d ---, 2016 WL 4570420, at *7 (1st Cir. Aug. 31, 2016).  To succeed on a First Amendment claim, a public employee must prove that (1) she was speaking as a citizen, not an employee, "on a matter of public concern," (2) her interests as a citizen outweighed the interests of her employer to provide public services efficiently, and (3) her speech was a substantial or motivating factor in the employer's action.  Id. Then, even if the employee can prove all three elements, the

---

[7] Brady does not address her individual claims in her objection or show that the allegations in her complaint support her claims. In her surreply, Brady does respond to some of the issues raised in the defendants' motion and reply.

employer is not liable if it can show it would have taken the same action if the employee had not spoken out.  Id.

In this case, Brady's allegations in her complaint, along with the exhibits she submitted with the complaint, show that Brady's accusations of grant fraud, challenges to the Axel film, and statements about AC were made while she was speaking in her role as AC's teacher.  See Decotiis v. Whittemore, 635 F.3d 22, 34-35 (1st Cir. 2011) (describing factors to consider in determining whether speech was as a citizen or employee).  She challenged the film as misrepresenting AC's abilities, based on her interaction with AC as his teacher and the information she gained in that role.  When she reported her accusations of grant fraud, she identified herself as AC's teacher and asserted that she was defending her student.  In addition, Brady provides no "citizen analog" to show that her speech was the kind that would be engaged in by private citizens.

Even if Brady met the first element, the second and third elements and the last consideration are determinative.  Brady was terminated for a variety of reasons, including that her reports to the media about the film and AC and her accusations of grant fraud disclosed confidential information about AC, which violated his rights to privacy, state and federal law, and school district requirements.  She also was terminated because she secretly collected DNA samples from another staff member and

had the samples tested in violation of school policy and state law.  In addition, she was terminated because she abandoned her job by never reporting to work at the school where she had been transferred.

Given the multitude of legitimate reasons for terminating her employment, Brady has not alleged facts that would show a plausible claim that the defendants violated her First Amendment right to free speech.

II.  Section 1983 – Fourteenth Amendment

Brady alleges that she was terminated in violation of her procedural and substantive due process rights under the Fourteenth Amendment.[8]  "The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 88 (1st Cir. 2014) (quoting U.S. Const. amend. XIV, § 1).  Due process includes both procedural and substantive rights.  Albright, 510 U.S. at 272.

_____

[8] Although Brady also alleges that the defendants violated rights under § 1983, she is mistaken.  Section 1983 does not confer rights but instead provides a statutory means to assert a violation of a federal right conferred elsewhere.  Albright v. Oliver, 510 U.S. 266, 271 (1994).

A.   <u>Procedural Due Process</u>

"Procedural due process protects a right to a fundamentally fair proceeding." Teng v. Mukasey, 516 F.3d 12, 17 (1st Cir. 2008).  To that end, procedural due process requires that a party be afforded notice and an opportunity to be heard "at a meaningful time and in a meaningful manner" before deprivation of life, liberty, or property.[9] Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  The requirements of due process, however, are flexible and depend on the particular situation. Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  In addition, "[p]re-termination and post-termination proceedings are not evaluated for constitutional adequacy in isolation from each other, a reviewing court studies the totality of the process received in light of the factual record to determine if the procedural due process was sufficient." Senra v. Town of Smithfield, 715 F.3d 34, 39 (1st Cir. 2013).

1.   <u>State Law Remedy</u>

The defendants first argue that Brady's § 1983 claim is barred, based on Reid v. State of N.H., 56 F.3d 332 (1st Cir. 1995), because she had adequate remedies in state law. Specifically, the defendants cite the hearing held on her

---

[9] The court will assume that Brady had a constitutionally protected property interest in her job.  See Senra, 715 F.3d at 38.

termination before the Somersworth School Board, the
availability of an appeal of the School Board's decision, and
her complaints before the Department of Education and Department
of Labor.  In Reid, the court held that claims stating causes of
action under state law tort theories should be analyzed under
state law rather than § 1983.  Id. at 336, n.8; see also Brown
v. Ferrara, 2012 WL 2237223, at *4 (D. Me. June 15, 2012).  The
defendants enumerate the procedures available to Brady but do
not cite any state law causes of action that should be analyzed
in lieu of the § 1983 claim.[10]

Therefore, Reid is not dispositive of the procedural due
process claim in this case.

### 2.  Process Provided

On the other hand, as the defendants explain, Brady was
afforded ample notice and multiple opportunities to be heard
before and after her termination.  Brady also acknowledges her
opportunities to be heard on the variety of issues she raises

---

[10] The defendants, who are represented by counsel, may have
intended to argue that even if the pre-termination process had
been insufficient, Brady had adequate post-termination remedies.
See, e.g., Hatfield v. McDonough, 407 F.3d 11, 21 (1st Cir.
2005).  That theory, however, was not sufficiently developed to
allow review.

and on her termination.[11]  Brady appears to base her procedural

due process claim on a misunderstanding of events during the

termination proceeding.

Brady asserts repeatedly that she was criminally prosecuted

during the termination proceeding for violating RSA 141-H:2.

She is mistaken.  No criminal prosecution occurred.[12]

RSA 189:13 provides that "[t]he school board may dismiss

any teacher found by them to be immoral, or who has not

satisfactorily maintained the competency standards established

by the school district, or one who does not conform to

regulations prescribed."  The statute also provides the process

for dismissal, that the teacher must be notified of the cause of

the dismissal before she is dismissed and she must be granted "a

full and fair hearing."  Id.

The School Board held a public hearing on the grounds

raised to support the superintendent's recommendation that Brady

---

[11] To the extent Brady contests the results of her complaints
to the New Hampshire Department of Education and the New
Hampshire Department of Labor, those proceedings are separate
from the termination proceeding in the school district.
Similarly, because her union is not a defendant here, her
complaints about union representation are not part of this suit.

[12] Brady also alleges that the defendants violated RSA 638:14
through "Unlawful Simulation of the legal process (directly
resulting in a deprivation of due process rights: inadequate
constitutional procedure)."  Brady has not shown that RSA 638:14
provides a private cause of action.  See Order, June 13, 2016,
doc. no. 23, at *9.  In addition, because she was not criminally
prosecuted, no due process violation occurred as she alleges.

be dismissed from her employment with the district pursuant to RSA 189:13 and ED 302(h).  Brady does not dispute that she was notified of the grounds for her dismissal.  The hearing continued over three sessions on separate evenings.  The Board issued its decision to dismiss Brady on January 20, 2015, which was based on four findings about Brady's conduct.

The Board found that Brady had acted in an unprofessional and unethical manner "when she sought to have bodily fluids of another staff member tested for identification without the knowledge or consent of the staff member and thereafter reported the results of the test to others."  Complaint, Exhibit 21, Doc. 1-21.  "The Board found (By a vote of 7 yes, 1 abstention) that the behavior violated RSA 141-H:2."  Id.  The Board concluded that Brady's conduct was "immoral" for purposes of RSA 189:13, not that her conduct was criminal.  Id.

Therefore, no procedural due process violation occurred.

B.  Substantive Due Process

Substantive due process protects against certain deprivations by the government regardless of whether the procedures used were sufficient.  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 (1st Cir. 2010).  To state a claim for violation of the right to substantive due process, a plaintiff must allege facts that show she "suffered the deprivation of an

14

established life, liberty, or property interest, <u>and</u> that such deprivation occurred through governmental action that shocks the conscience." Najas Realty, LLC v. Seekonk Water District, 821 F.3d 134, 145 (1st Cir. 2016). Conscience shocking actions show "an extreme lack of proportionality," that is, a "violation[] of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of power literally shocking to the conscience." Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (internal quotation marks omitted).

Brady makes no allegations in her complaint that are specifically related to her claim of a violation of substantive due process. She also does not address that claim in her objection to the defendants' motion for judgment on the pleadings. Nothing alleged in the complaint rises to the level of a substantive due process violation.

Therefore, the defendants are entitled to judgment on the pleadings on Brady's § 1983 claims, which are the claims numbered 1, 3, 5, and 9 (to the extent claim 9 alleges a due process violation) in the list provided in the complaint.

C.   State Law Claims

The defendants also move for judgment on the pleadings on Brady's state law claims.  All of Brady's federal claims, however, have been dismissed.  The court declines to exercise supplemental jurisdiction to consider the state law claims.  See 28 U.S.C. § 1367(c).  The state law claims are dismissed without prejudice.

Conclusion

For the foregoing reasons, the defendants' motion for judgment (document no. 41) is granted.  The state law claims are dismissed without prejudice.

As all claims now have been resolved in favor of the defendants, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_Joseph A. DiClerico, Jr._
Joseph DiClerico, Jr.
United States District Judge

November 3, 2016

cc:  Lisa Marie Brady, pro se
     Demetrio F. Aspiras, III, Esq.
     Brian J.S. Cullen, Esq.
     Melissa A. Hewey, Esq.